UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
INTELSAT, LTD., et al.,                :
                                       :
            Plaintiffs,                :        06 Civ. 10165 (JSR)
                                       :
            -v-                        :        OPINION AND ORDER
                                       :
THE INTERNATIONAL TELECOMMUNICATIONS   :
SATELLITE ORGANIZATION,                :
                                       :
            Defendant.                 :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

        Plaintiffs Intelsat, Ltd., Intelsat (Bermuda), Ltd., and

Intelsat Global Services Corporation (collectively, "Intelsat") moved

pursuant to Fed. R. Civ. P. 56 for partial summary judgment, seeking

to compel defendant International Telecommunications Satellite

Organization ("ITSO") to furnish Intelsat with newly executed

versions of (a) a quitclaim deed to Intelsat's Washington, D.C.

headquarters and (b) a District of Columbia Tax Form FP7/C related to

that building.  The new versions are needed so as to allow the

District of Columbia to effect recordation of the headquarters in

Intelsat's name.

        Following briefing and oral argument, the Court, by Order

dated February 28, 2007 (the "February 28 Order"), granted Intelsat's

motion and directed ITSO to execute and deliver the two documents at

issue by no later than March 9 2007. Thereafter, the Court, by Order

dated March 7, 2007, stayed execution of the February 28 Order until

March 16, 2007 so that the parties would have the benefit of this

Opinion setting forth the reasons for the February 28 Order and

directing entry of partial judgment pursuant to Fed. R. Civ. P. 54(b).

Intelsat and ITSO ultimately derive from a common parent established in 1964 by intergovernmental agreement for the purpose of providing on a global telecommunications satellite system.  See Plaintiff's Statement Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 1; Defendant's Counter Statement Pursuant to Local Rule 56.1 ("Def. 56.1") ¶ 1. In 2001, the three Intelsat entities were formed to facilitate a series of transactions by which Intelsat acquired substantially all the parent's assets, leaving behind only a paired-down ITSO to supervise compliance with various public service obligations.  As part of the Transfer Agreement that helped effectuate certain of these transactions, ITSO was required to execute the documents here at issue.

On December 5, 2003, at the request of Intelsat, Ahmed Toumi, ITSO's Director General, duly signed and delivered to Intelsat a Quitclaim Deed to the Intelsat Headquarters and a related District of Columbia Real Property and Recordation Transfer Tax Form FP7/C ("Form FP7/C"). Pl. 56.1 ¶ 37; Def. 56.1 ¶ 37.  It turned out, however, that the two documents could not be recorded because, as of that time, certain necessary preliminaries had not yet been undertaken by the Government of the District of Columbia. Pl. 56.1 ¶¶ 38-39; Def. 56.1 ¶¶ 38-39.  These steps were not taken until April, 2005, at which time Intelsat asked ITSO to re-execute the same two documents but with the new dates required by the District of Columbia.  Pl. 56.1 ¶¶

2

38-39; Def. 56.1 ¶¶ 38-39.  ITSO, however, refused and has
consistently refused, since then, to comply with repeated requests
from Intelsat to re-execute the two documents at issue in this
litigation.  Pl. 56.1 ¶¶ 39-43; Def. 56.1 ¶¶ 39-43.

ITSO's purported ground for such refusal is that its
obligation to comply with the requirements of the Transfer Agreement
is excused because of a supposed breach by Intelsat of a Public
Services Agreement that imposed certain public service obligations on
Intelsat.  In the instant motion practice, however, ITSO failed to
adduce any competent evidence of any such breach, relying instead on
conclusory hearsay.  But even if ITSO had produced material evidence
of such a breach and/or even if, as ITSO contends, the question of
whether such a breach has occurred is a matter for arbitration,
breach of the Public Services Agreement would not excuse performance
of obligations imposed by the Transfer Agreement unless the two
agreements were mutually dependent.  See Commander Oil Corp. v.
Advance Food Serv. Equip., 991 F.2d 49, 52-53 (2d Cir. 1993); Greasy
Spoon, Inc. v. Jefferson Towers, Inc., 75 N.Y.2d 792, 795; 552 N.Y.S.
2d 92, 94 (1990).

This is plainly not the case.  To being with, the Transfer
Agreement and the Public Services Agreement were executed at
different times and between formally different parties.  More
significantly, they contain irreconcilable choice-of-law provisions,
with New York law governing the former and District of Columbia law
the latter.  More telling still, while the Public Services Agreement

requires the parties to arbitrate their disputes, the Transfer
Agreement requires that any actions to enforce it must be brought in
State or Federal court in Manhattan. Finally, the one agreement that
arguably relates the Transfer Agreement to the Public Services
Agreement, namely a Restructuring Agreement that sets forth the
overall plan for the reorganization, provides in section 4.01(c) that
each of the underlying agreements (expressly including the Transfer
Agreement and the Public Services Agreement) "shall become effective
in accordance with [each agreement's] respective terms, and the
rights and obligations of the parties to each of such [agreement]
shall be as shall be as set forth therein or contemplated thereby."
Pl. 56.1 ¶ 25; Def. 56.1 ¶ 25.

In sum, the express terms of these documents reveal a clear and
unambiguous intent to treat the Transfer Agreement and the Public
Services Agreement as two separate and independent agreements serving
separate purposes: the first to transfer assets from the predecessor
parent to Intelsat, to be governed by New York law and enforceable in
a New York court; and the second to provide for oversight by ITSO of
certain of Intelsat's public service obligations, to be governed by
District of Columbia law and subject to a somewhat protracted dispute
resolution process culminating in arbitration.  Since the two
agreements are independent, Intelsat is entitled to specific
enforcement by this Court of ITSO's independent obligation under the
Transfer Agreement  to execute the two documents needed for transfer,
regardless of any alleged breach of the Public Services Agreement.
See, e.g., Arciniaga v. General Motors Corp., 460 F.3d 231, 237 (2d

4

Cir. 2006); <u>Rudman v. Cowles</u>, 30 N.Y.2d 1, 13; 330 N.Y.S. 2d 33, 42 (1973); <u>Pfizer v. Stryker</u>, 348 F. Supp. 2d 131, 146-48 (S.D.N.Y. 2004).

In reaching this conclusion, the Court has considered, and rejected, each of ITSO's arguments for claiming that the two agreements are interdependent, only two of which even warrant discussion. The first is ITSO's argument that the "whereas" clause in the Public Services Agreement renders Intelsat's fulfillment of its various public service obligations a "prerequisite" to ITSO's going forward with the transfer of assets. But quite aside from the fact that this argument is irreconcilable with the actual chronology of the agreements (which contemplated that the transfers would come first), it ignores the well-settled rule that although "a statement in a 'whereas' clause may be useful in interpreting an ambiguous operative clause in a contract, 'it cannot create any right beyond those arising from the operative terms of the document.'" <u>Abraham Zion Corp. v. Lebow</u>, 761 F.2d 93, 103 (2d Cir. 1985) (quoting <u>Genovese Drug Stores v. Connecticut Packing Co.</u>, 732 F.2d 286, 291 (2d Cir. 1984)). Here, since the independence of the two contracts is clear and unambiguous, the "whereas" clause is irrelevant. Further still, as already noted, section 4.01(c) of the Restructuring Agreement expressly provides that each agreement shall be enforceable in accordance with its own terms, rendering ITSO's interpretation of the "whereas" clause downright fanciful.

ITSO also argues that enforcing the Transfer Agreement would somehow infringe on the supposed right of the arbitrators under the

Public Services Agreement to take a first cut at arbitrating whether the two agreements are related.[1]  But quite aside from the fact that no arbitration under the Public Services Agreement has even been commenced, the plain meaning of the Transfer Agreement and the Restructuring Agreement deprives the arbitrators of any jurisdiction over the enforcement of the Transfer Agreement as a "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.</u>, 252 F.3d 218, 224 (2d Cir. 2001) (quoting <u>AT & T Techs., Inc. v. Communications Workers of Am.</u>, 475 U.S. 643, 648 (1986)).  Here, the parties unequivocally agreed in the Transfer Agreement that any dispute relating to the enforcement of their obligations thereunder would be resolved in court.

Accordingly, the Clerk of the Court is instructed to forthwith enter partial summary judgment pursuant to Fed R. Civ. P. 54(b), directing ITSO to execute and deliver the quitclaim deed and Form FP7/C annexed to plaintiffs' amended complaint by no later than the close of business on Friday, March 16, 2007.[2]

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

---

[1] This argument was not really raised by ITSO until oral argument on the instant motion.

[2] Although ITSO has moved for a stay of the February 28 Order and, by extension, the instant Order, its application simply advances the same arguments already rejected by this Court and entirely fails as well to demonstrate irreparable harm. Accordingly, ITSO's motion for a further stay is denied.

6

Dated:      New York, New York
            March 14, 2007